**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICHELE D.,[1]                                    )
                                                  )
            Plaintiff,                            )
                                                  )        **CIVIL ACTION**
v.                                                )
                                                  )        **No. 21-1111-JWL**
KILOLO KIJAKAZI,[2]                               )
**Acting Commissioner of Social Security,**       )
                                                  )
            Defendant.                            )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the

Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error

in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

**I.      Background**

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms.
Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In
accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for DIB on April 29, 2019.  (R. 15, 164). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to evaluate her allegations of symptoms in accordance with Social Security Ruling (SSR) 16-3p.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff claims the ALJ "relied on inconsistencies that did not exist in the record, a misunderstanding of the nature of non-epileptic seizures, and selective reading of the record" in evaluating Plaintiff's allegations of symptoms resulting from her non-epileptic seizure disorder.  (Pl. Br. 8).  She argues, "Though the ALJ provided some reasons that purportedly downplayed the impact of [her] seizures, he failed to provide reasons that were supported for discounting the frequency and intensity of her seizures and how they impacted her after each episode."  Id. at 9.  She argues "he did not explain how her 'intermittent seizures' were inconsistent with the frequency of seizures [she] reported."  Id. at 9-10 (citing Andria N. C. v. Saul, Civ. A. No. 20-1163-JWL, 2021 WL 2222681, at *5 (D. Kan. June 2, 2021)).  She argues the ALJ failed to explain how intermittent

4

seizures are inconsistent with Plaintiff's seizure log showing a seizure every one to two months.  (Pl. Br. 10).

Plaintiff argues normal findings on examination is not inconsistent with having non-epileptic seizures which can "not be confirmed by EEG, MRI, or CT scans like epileptic seizures." Id. at 11.  She argues the ALJ's findings misunderstand the nature of non-epileptic seizures when he noted that Plaintiff's seizures do not equal Listing 11.02 which applies only to epileptic seizure disorder.  Id. at 12.

Finally, Plaintiff argues the ALJ erred in finding the treatment notes were inconsistent with Plaintiff's allegations of weakness and fatigue for days after a seizure. Id. (citing Otte v. Berryhill, Civ. A. No. 18-2006-JWL, 2018 WL 5263515, at *5 (D. Kan. Oct. 23, 2018)).  She argues the ALJ's finding "was based on two isolated appointments and did not consider the entirety of the treatment notes."  Id. at 13.

The Commissioner argues the ALJ appropriately evaluated Plaintiff's allegations of symptoms resulting from her non-epileptic seizure disorder.  She points to record evidence supporting the ALJ's findings "the objective medical evidence [did] not support [Plaintiff's] allegations of disabling impairments" (Comm'r Br 9) (quoting R.22); there are inconsistencies in Plaintiff's statements about lingering effects and the record evidence of lingering effects, that Plaintiff received only intermittent care for her seizure disorder, id. at 10; there was improvement in Plaintiff's symptoms over time, and she worked at less than substantial gainful activity for almost a year after her alleged onset date. Id. 11.  She argues the ALJ's findings are supported by substantial record evidence.  She argues, "even if the ALJ took Plaintiff at her word that she had [] one-to-

three-minute seizures monthly or bimonthly, he discounted her testimony about the extensive after-effects from these seizures that would prevent her from working," and that the record evidence of "fatigue, weakness, low energy, and exhaustion after a seizure" consists of Plaintiff's subjective reports contradicted by other record evidence. (Comm'r Br. 14).

### A.    Standard for Evaluating a Claimant's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3).  These factors include:

6

the levels of medication and their effectiveness, the extensiveness of the
attempts (medical or nonmedical) to obtain relief, the frequency of medical
contacts, the nature of daily activities, subjective measures of credibility
that are peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating a claimant's allegations of symptoms which overlap and expand

upon the factors stated by the court:  Daily activities; location, duration, frequency, and

intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage,

effectiveness, and side effects of medications taken to relieve symptoms; treatment for

symptoms; measures plaintiff has taken to relieve symptoms; and other factors

---

[3] Luna, Thompson, and Kepler were decided when the term used to describe the
evaluation of a claimant's allegations of symptoms resulting from her impairments was
"credibility determination."  Although that term is no longer used, the applicable
regulation never used that term and the procedure for evaluating a claimant's allegations
of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation
of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688
Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in
Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as
explained in the regulations in effect on November 27, 2020, when this case was decided.
Nonetheless, to the extent, and only to the extent that "subjective measures of credibility
that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an
examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is
no longer a valid factor to be considered.

concerning limitations or restrictions resulting from symptoms.  20 C.F.R.

§ 404.1529(c)(3)(i-vii).

### B.    The ALJ's Relevant Findings

The ALJ found that Plaintiff has severe mental impairments of non-epileptic

seizure disorder, depressive disorder, and anxiety disorder.  (R. 18).  The ALJ found

Plaintiff's condition does not meet the criteria

> of Listing 11.02 regarding convulsive epilepsy because she does not have
> seizures occurring at least once a month in spite of three months treatment.
> Although the claimant has asserted her seizures occur at a frequency that
> rise to a listing level, the evidence as discussed below, supports that when
> the claimant is treatment compliant, her seizures are better controlled.

(R. 19).  Later, he also found, "Although the claimant continues to have intermittent

seizures, the evidence does not undermine the medical expert or state agency

[consultants'] conclusions that she does not equal [Listing] 11.02."  Id. at 26.

The ALJ explained he had evaluated Plaintiff's allegations of symptoms in

accordance with 20 C.F.R. § 404.404.1529 and SSR 16-3p.  (R. 21).  He stated he found

Plaintiff's allegations "are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision."  Id.  He found the

objective medical evidence does not support Plaintiff's allegations and explained he had

considered the record as a whole in accordance with the regulatory factors in SSR 16-3p.

Id. at 22.  After summarizing Plaintiff's treatment records for her physical impairments,

the ALJ concluded:

> Overall, the claimant's complete treatment records do not document the
> limitations she subjectively alleges or otherwise establish functional

8

limitations that would preclude the range of light exertion established in the residual functional capacity, above.

Id. at 23.  He then summarized and explained his consideration of Plaintiff's mental impairments and mental health treatment records.  Id. 23-24.

The ALJ explained his finding regarding Plaintiff's allegations of disabling symptoms from her non-epileptic seizure disorder:

> The claimant's allegations of limitations are given weight to the extent that she is reduced to a level of work as outlined herein.  However, the claimant's allegations of disabling limitations are not supported by the objective medical evidence and examination findings as noted above.

> The claimant continues to experience intermittent seizures with no current evidence that they are epileptic in nature.  The claimant testified that she has extreme weakness and fatigue after episodes but this is inconsistent with the observations of medical personnel.  For example, the claimant did present to the emergency room on June 28, 2018 with complaint of seizure; however, emergency room personnel (Exhibit 4F/9) observed no post-ictal state.  Similarly, records from the claimant's primary care provider noted that the claimant complained of seizure activity and she experienced an episode in the lobby.  On examination during her visit, the claimant was described as alert and oriented and in no acute distress, with no focal deficits (Exhibit 4F/49).

> The claimant has continued to report some intermittent seizures, although she has reported improvement with cognitive behavioral therapy and with the implementation of Lamicital (Exhibit 11F/2).  She did return to the emergency room on May 8, 2020 for a seizure episode (Exhibit 17F/2), but a neurological examination demonstrated normal range of motion in all tested joints, normal speech and facial symmetry, and normal mood and affect (Exhibit 17F/3).  A Computed Tomography (CT) scan of the head was normal (Exhibit 17F/5).  Updated EEG testing was performed on May 9, 2020 and was mildly abnormal due to intermittent temporal lobe slowing of theta range, suggestive of structural lesion.  There were no epileptiform discharges noted during the study (Exhibit 17F/16).  It was believed that the claimant's breakthrough seizure was likely secondary to a urinary tract infection and she was switched from Lamictal to Keppra (Exhibit 17F/29).  Ultimately, the claimant's limitations are contemplated by the residual functional capacity.

(R. 25).

### C.        Analysis

Plaintiff is correct that normal findings on physical examination are not
inconsistent with non-epileptic seizures.  But the ALJ did not say those findings are
inconsistent with non-epileptic seizures.  Rather, he found that Plaintiff has the severe
impairment of non-epileptic seizures (R. 18) and based that finding in part on the
evidence of normal physical examination findings.  Id. 22-24.  The record also contains
evidence that early-on there was some indication Plaintiff might have epileptic seizures,
so it was appropriate for the ALJ to explain that her seizures did not meet the criteria of
Listing 11.02.  Id. 19.  Moreover, because it is necessary to consider whether a claimant's
condition might medically equal a Listed impairment, it was appropriate for the ALJ to
explain, "the evidence does not undermine the medical expert or state agency
[consultants'] conclusions that she does not equal 11.02."  Id. 26.

Plaintiff's argument the ALJ erred in finding the treatment notes were inconsistent
with Plaintiff's allegations of weakness and fatigue for days after a seizure also fails.
Plaintiff is correct SSR 16-3p recognizes "Symptoms may vary in their intensity,
persistence, and functional effects, or may worsen or improve with time."  2016 WL
1119029, a *8 (SSA March 16, 2016).  The ALJ, however, was not relying on varying
symptoms.  He found, rather, that Plaintiff's seizures did not leave her in a post-ictal state
of significant duration.  This court's decision in Otte was dealing with a claimant with
Ménière's disease and says nothing about the post-ictal state of a seizure.  It is simply not
relevant here.

Plaintiff's further argument that "the ALJ's finding was based on two isolated appointments and did not consider the entirety of the treatment notes" misses the significance of those "two isolated" findings.  (Pl. Br. 13).  The ALJ relied upon the fact Plaintiff's testimony "that she has extreme weakness and fatigue after episodes … is inconsistent with the observations of <u>medical personnel</u>."  (R. 25) (emphasis added).  The ALJ cited an incident where Plaintiff went to the emergency room after a seizure and "emergency room personnel observed no post-ictal state."  <u>Id.</u> (citation omitted).  He cited another incident where Plaintiff "experienced an episode in the lobby" of her primary care provider, but on examination she "was described as alert and oriented and in no acute distress, with no focal deficits."  <u>Id.</u>

Plaintiff points to evidence that her mother was with her when she had a seizure and described to the doctor a "grand mal seizure complete with post-ictal state."  (R.553). She cites treatment notes where she reported fatigue, weakness, low energy and exhaustion days after the seizure and the report of a co-worker reporting impacts days after the fact.  (Pl. Br. 13).  The record does not reveal that Plaintiff's mother is a health care provider and provides no evidence of her qualification to know a grand mal seizure or a post-ictal state.  Nor is there evidence to suggest Plaintiff's co-worker has such medical qualifications.  Moreover, Plaintiff's allegations are the very subject of the ALJ evaluation at issue.  He found those allegations inconsistent with the evidence, and the record supports his findings.  As the ALJ found, Plaintiff's allegations of a long-term debilitating post-ictal state are inconsistent with the observations of medical personnel,

11

and Plaintiff points to no observation by medical personnel to a contrary effect.  She has shown no error in this finding.

What is left is Plaintiff's argument that the ALJ "did not explain how her 'intermittent seizures' were inconsistent with the frequency of seizures [she] reported." (Pl. Br. 9-10).  A fair reading of the ALJ's decision reveals he accepted Plaintiff's report regarding the frequency of her seizures.  (R. 23, ("some intermittent spells (May 5, 2018; May 6, 2018; September 20, 2018; October 24, 2018; January 7, 2019; March 2, 2019; April 12, 2019; April 14, 2019)"); 25, ("The claimant continues to experience intermittent seizures with no current evidence that they are epileptic in nature.").   Thus, there was no inconsistency to explain.

What Plaintiff misses is that with "seizures about once every month or two months, with the longest time between her seizures being three months" (Pl. Br. 7), there is no conflict with the RFC assessed by the ALJ or with the testimony of the vocational expert.  As noted above, the ALJ found Plaintiff's seizures do not have a post-ictal state lasting multiple days.  Thus, at most, a seizure requires her to leave work for the remainder of the day on which a seizure occurs and she can return to work the next day.

Plaintiff provided a seizure log showing sixteen seizures between December 14, 2017 and February 22 2020, inclusive.  (R. 296).  The record evidence shows an additional seizure on April 12, 2019 and one on May 9, 2020 resulting in eighteen seizures during the relevant period.  (R. 634).  The seizure log does not reveal the time of day or the duration of most of the seizures.  Id. at 296.  It does not have a space in the log for the day of the week and therefore the day of the week is listed for none of the

seizures.  Id.  Nevertheless, searching each date on the calendar for that year reveals that nine of the eighteen dates of a seizure fall on a Saturday or Sunday.  Therefore, the log reveals Plaintiff would have missed a part of nine workdays during a 30-month period— or a part of one day in over three months.  This is well within industry standards which the vocational expert testified "allow for a half a day to no more than one day sick leave every month."  (R. 58).

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 23, 2022, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**